## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

JORGE LUIS GARZA,                                  :
                                                   :
      Plaintiff,                                   :
                                                   :
     v.                                           :     Civil Action No. 16-0976
                                                   :     Civil Action No. 16-0980
U.S. MARSHALS SERVICE, *et al.*,                   :     Civil Action No. 16-0985
                                                   :     (CONSOLIDATED)
      Defendants.                                  :

### MEMORANDUM OPINION

This case brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and

the Privacy Act ("Privacy Act" and "PA"), 5 U.S.C. § 552(a), is before the Court on defendants'

amended motion for summary judgment ("Defs.' Mot.") [ECF No. 34], memorandum ("Defs.'

Mem.") [ECF No. 34], statement of material facts ("Defs.' Stmt.") [ECF No. 34–1], and

declarations ("Decls.") and exhibits in support ("Defs.' Exs.") [collectively, ECF Nos. 30–1, 2, 3,

4]. Also before the Court is plaintiff's motion for entry of default and judicial notice ("Mot. for

Dflt.") [ECF No. 36], motion for status of case and judicial notice ("Mot. for Jud. Not.") [ECF No.

44], and second motion for judicial notice ("Sec. Mot. for Jud. Not.") [ECF No. 46]. For the

reasons stated herein, defendants' amended motion for summary judgment will be granted as to

defendants, the United States Marshals Service, the Federal Bureau of Investigation, and the Drug

Enforcement Administration.[1] Plaintiff's motion for entry of default and judicial notice will be

denied and his motions for status/judicial notice will also be denied.

---

[1] In certain portion of defendants' filings, they appear to move for summary judgment on behalf of the Executive Office of United States Attorneys ("EOUSA"). *See, e.g.,* Defs.' Stmt. at 1; Defs.' Proposed Order. EOUSA handled the very initial stages of one of plaintiff's first FOIA/PA requests. Hardy Decl. at ¶ 7; Hardy Ex. A. However, EOUSA forwarded the request to the appropriate agencies within the Department of Justice. *Id.* Plaintiff has not named EOUSA as a defendant in this matter nor has he raised any issues in his filings seeking any relief against same. Furthermore, defendants have not moved for summary judgment on behalf of EOUSA in the body of their motion or memorandum, nor do they attach any specific arguments, affidavits, or evidence in support. Therefore, the Court declines to address summary judgment on behalf of EOUSA.

## I.  BACKGROUND

Plaintiff, Jorge Luis Garza ("plaintiff"), proceeding *pro se*, is a federal prisoner designated to Hazelton Federal Correctional Institution, located in Bruceton Mills, North West Virginia. Complaint ("USMS Compl.") [ECF No. 1] at caption.  Defendants report that plaintiff was charged with various crimes including, among others, conspiracy to launder monetary instruments and conspiracy to distribute cocaine, in the Southern District of Texas. Declaration of David M. Hardy ("Hardy Decl.") at ¶ 6.  The public record corroborates this account.  *See USA v. Vallejo, et. al*, no. 4:99-cr-00455-2 (S.D. TX Aug. 29, 1999).  Plaintiff was declared a fugitive from the law in August 1999.  Hardy Decl. at ¶ 6.  Defendants further attest that USMS was tasked with apprehending plaintiff, which was accomplished on July 6, 2001.  *Id.; USA v. Vallejo, et. al*, no. 4:99-cr-00455-2 (S.D. TX Aug. 29, 1999) at Arrest Warrant [ECF No. 192].  He was convicted on January 23, 2003.  Hardy Decl. at ¶ 6; *USA v. Vallejo, et. al*, no. 4:99-cr-00455-2 (S.D. TX Aug. 29, 1999) at Court Verdict [ECF No. 281].  Plaintiff was sentenced on June 10, 2013 to four life sentences, and 240 months to be served concurrently.  Plaintiff's Opposition to Summary Judgment ("Pl.'s Opp.") [ECF No. 37] at 2 ¶ 3. *USA v. Vallejo, et. al*, no. 4:99-cr-00455-2 (S.D. TX Aug. 29, 1999) at Sentencing [ECF No. 299].

Here, plaintiff initially filed three separate complaints in three separate matters, *see Garza v. FBI*, No. 16-0980 at Complaint ("FBI Compl.") [ECF No. 1], *Garza v. DEA*, No. 16-0985 at Complaint ("DEA Compl.") [ECF No. 1], and *Garza v. USMS*, No. 16-0985 at USMS Compl. These cases have since been consolidated in full under Case No. 16-0976. Plaintiff sues the United States Marshals Service ("USMS"), the Drug Enforcement Administration ("DEA"), and the Federal Bureau of Investigation ("FBI").  *See* FBI Compl. at caption; DEA Compl. at caption; USMS Compl. at caption.

Plaintiff seeks any and all materials relating to his Narcotics and Dangerous Drugs Information System ("NADDIS") number 3944994. DEA Compl. at 1 ¶ 1. He also specifically requests any photographs, surveillance, and fingerprint class/pattern class, used and/or collected in the process of charging him with a "violation of probation" in his underlying criminal matter, *USA v. Vallejo, et. al*, no. 4:99-cr-00455-2 (S.D. TX Aug. 29, 1999), and/or relating to his arrest, which occurred in North Carolina. Pl.'s Opp. at 2 ¶ 3; Hardy Decl. at ¶ 7; Hardy Ex. A; *USA v. Vallejo, et. al*, no. 4:99-cr-00455-2 (S.D. TX Aug. 29, 1999) at Arrest Warrant [ECF No. 192]. Plaintiff requests copies of any warrant relating to a probation violation, based on a reference to such a charge ("no. 1-5012") on his National Crime Information Center ("NCIC") report and/or affiliated with his NADDIS number. USMS Compl. at 1, 3, 6; FBI Compl. at 1, 3; USMS Compl. Ex. B. Plaintiff contests the idea that he was ever a "probation violator" and objects to such characterization on his personal background reports and with his current NADDIS number. Plaintiff's Surreply ("Pl.'s Surreply") [ECF No. 43] at 1–2. Defendants have apparently recently corrected a particular portion of plaintiff's record at his request and in this regard. *Id.*; Defendants' Reply to Opposition ("Defs.' Reply") [ECF No. 40] at 2 ¶ 2, 2 n.1; Pl.'s Mot. for Dflt. Ex. A. The exact nature of the correction is not entirely clear from the record, nor does it appear to be material to this FOIA/PA action. *See id.* Plaintiff continues to allege that defendants have either failed to conduct an adequate search and/or are improperly withholding his requested records. USMS Compl. at 1–3, 5–6; FBI Compl. at 1–4; DEA Compl. at 1–3, 5; Pl.'s Opp. at 2 ¶ 3.

On March 31, 2010, plaintiff sent a FOIA/PA request regarding his person to USMS. Declaration of William E. Bordley ("Bordley Decl.") at ¶ 2; Bordley Ex. A. By letter dated June 27, 2011, USMS acknowledged plaintiff's FOIA request ("First USMS Request" and "First USMS

3

Request No. 2011-USMS-16960") and indicated that a search for responsive records would be conducted.   Bordley Decl.at ¶ 3; Bordley Ex. B.

On December 27, 2010, plaintiff submitted another FOIA/PA request, this time directed to the Executive Office of United States Attorneys ("EOUSA").   Hardy Decl. at ¶ 7; Hardy Ex. A. After review, and very shortly thereafter, EOUSA determined that the request was appropriate for the FBI, and referred it for handling and direct response to plaintiff.   *Id.*   Plaintiff specifically requested: (1) case number for probation violation and original case, (2) personal identifiers of arrestee (such as any available descriptions and photographs), and (3) fingerprint class and pattern class. *Id.*

By letter dated February 10, 2011, the FBI acknowledged receipt of plaintiff's request ("FBI Request" and "FBI Request No. 1161297-000").   Hardy Decl. at ¶ 8; Hardy Ex. B.   In the letter, the FBI advised plaintiff that it required additional identifying information in order to conduct a search within the Central Records System ("CRS").   *Id.*   The FBI also enclosed a Certification of Identity Form ("DOJ-361 form"), to be completed by plaintiff.   *Id.*

On March 3, 2011, plaintiff returned the executed the DOJ-361 form.   Plaintiff provided his full legal name as, "Guillermo Huertas Sanchez," as well as other personal identifiers such as his current address, date of birth, and place of birth.   Hardy Decl. at ¶ 9; Hardy Ex. C.   Plaintiff also included a copy of his Criminal Information Report ("CIR").   *Id.*   On March 22, 2011, the FBI acknowledged receipt of the additional requested information, and advised plaintiff that it would be undertaking a search of CRS for information responsive to his FBI Request.   Hardy Decl. at ¶ 10; Hardy Ex. C.   On May 23, 2011, plaintiff inquired regarding the status of his FBI Request. Hardy Decl. at ¶ 11; Hardy Ex. E.

By letter dated June 24, 2011, the FBI responded to FBI Request No. 1161297-000.  It reviewed 137 pages and released 81 pages, in full or in part.  Hardy Decl. at ¶ 12; Hardy Ex. F. The FBI cited Privacy Act Exemption, 5 U.S.C. § 552a(j)(2) ("Exemption (j)(2)"), as well as FOIA Exemptions 5 U.S.C. § 522(b)(1) ("Exemption 1"), 5 U.S.C. § 522(b)(6) ("Exemption 6"), 5 U.S.C. § 552(b)(7)(C) ("Exemption 7(C)"), and 5 U.S.C. § 552(b)(7)(D) ("Exemption 7(D)").  *Id.* FBI also referred seven documents, totaling 52 pages, to DEA.  *Id.* at ¶ 12; Hardy Ex. F; Declaration of Katherine L. Myrick ("Myrick Decl.") at ¶ 5; Myrick Ex. A.  Additionally, it sent a "one-page" FBI-originating document for consultative review by DEA, with instructions to return it to the FBI after such review.  *Id.*

On July 6, 2011, plaintiff appealed the response to FBI Request No. 1161297-000 to OIP. Hardy Decl. at ¶ 13; Hardy Ex. G.  In a letter dated July 27, 2011, OIP acknowledged receipt of plaintiff's appeal ("FBI Appeal" and "FBI Appeal No. AP-2011-02517").  Hardy Decl. at ¶ 14; Hardy Ex. H.  On September 30, 2011, OIP determined that the FBI properly withheld information pursuant to Exemptions 6, 7(C), and 7(D).  Hardy Decl. at 15; Hardy Ex. I.  OIP referred the information withheld pursuant to Exemption 1 to DOJ's Review Committee ("DRC") to determine if the information should remain classified under Executive Order No. 13526.  *Id.*

By letter dated July 21, 2011, USMS responded to First USMS Request No. 2011-USMS-16960.  Bordley Decl. at ¶ 7; Bordley Ex. C.  USMS searched its files and found 77 pages indexed to plaintiff's name and personal identifiers.  *Id.*  USMS released the 77 pages to plaintiff, 29 in full, and 48 with redactions.  *Id.*  USMS cited Exemption 7(C) for its withholdings.  *Id.*  By letter dated July 27, 2011, plaintiff filed an administrative appeal ("First USMS Appeal" and "USMS Appeal No. AP-2011-02817") with OIP regarding the response to his First USMS Request. Bordley Decl. at ¶ 8; Bordley Exs. D, E.

On October 18, 2011, plaintiff submitted a second FOIA/PA request ("Second USMS Request" and "Second USMS Request No. 2011-USMS-16960") to USMS. Bordley Decl. at ¶ 10; Bordley Ex. F. Approximately three months before making this Second USMS Request, and following the indictment in the Southern District of Texas, plaintiff was arrested by the USMS and placed within its custody. Pl.'s Opp. at 2 ¶ 3; Hardy Decl. at ¶ 7; Hardy Ex. A; Bordley Decl. at ¶¶ 10, 11; Bordley Ex. F; *Id; USA v. Vallejo, et. al*, no. 4:99-cr-00455-2 (S.D. TX Aug. 29, 1999) at Arrest Warrant [ECF No. 192]. Plaintiff's Second USMS Request sought the release of any arrest warrant relating to a violation of probation, prompting this arrest. Bordley Decl. at ¶¶ 10, 11; Bordley Ex. F. In response to the Second USMS Request, USMS conducted a supplemental search of the Eastern District of North Carolina and Southern District of Texas to determine whether those districts maintained the requested warrant. *Id.* This search did not render any responsive documents. Bordley Decl. at ¶ 12; Bordley Ex. G.

By letter dated October 26, 2011, USMS notified plaintiff that no records were found pursuant to the Second USMS Request No. 2011-USMS-16960. *Id.* Plaintiff appealed ("Second USMS Appeal" and "USMS Appeal No. AP-2012-00657") this USMS response on November 7, 2011. Bordley Decl. at ¶ 14; Bordley Ex. I.

On, November 7, 2011, OIP rendered a decision regarding plaintiff's First USMS Appeal (USMS Appeal No. AP-2011-02817). Bordley Decl. ¶ 13; Bordley Ex. H. As a result, OIP released three additional pages in full, and one page in part. Exemption (7)(C) was invoked for the partial withholdings. *Id.*

Meanwhile, by letter dated November 14, 2011, DEA released portions of one page to plaintiff. Myrick Decl. at ¶¶ 6, 13; Myrick Ex. B. DEA withheld eight pages in their entirety. *Id.* DEA relied upon Exemptions (7)(C), (7)(D), 5 U.S.C. § 552(b)(7)(E) ("Exemption 7(E)"), and 5

U.S.C. § 552(b)(7)(F) ("Exemption 7(F)").  *Id.*  DEA also determined that 43 of the referred pages were non-responsive to plaintiff's Request parameters, and those pages were later returned to the FBI. Myrick Decl. at ¶¶ 6, 8; Myrick Exs. B, D.  Lastly, DEA determined that the "one-page" FBI document, for which FBI requested consult, was appropriate for release and returned it to the FBI accordingly.  Myrick Decl. at ¶ 7; Myrick Ex. B.

On May 7, 2012, OIP affirmed USMS's determinations regarding plaintiff's Second USMS Request, and closed the Second USMS Appeal (USMS Appeal No. AP-2012-00657). Bordley Decl. at ¶ 15; Bordley Ex. J.

On February 21, 2013, the FBI responded by letter to plaintiff regarding its supplemental findings to OIP's referral to the DRC.  Hardy Decl. at ¶ 16; Hardy Ex. J.  With the letter, FBI provided plaintiff with one re-processed document page. *Id.* The FBI advised plaintiff that the information previously withheld as classified pursuant to Exemption 1 had since been declassified. *Id.*  However, FBI further explained this declassified information was also exempt from disclosure pursuant to Privacy Act Exemption (j)(2) and FOIA Exemptions 6, 7(C), and (7)(D).[2]  *Id.*  The FBI attempted to send this letter twice, but it was returned both times as "not deliverable as addressed and unable to forward," as apparently plaintiff's P.O. Box had been closed.  Hardy Decl. at ¶¶ 16, 17; Hardy Exs. J, K.

On May 24, 2016, plaintiff initiated litigation in this Court.  Hardy Decl. at ¶ 18; *see generally*, USMS Compl.; FBI Compl.; DEA Compl.  On September 6, 2016, FBI resent its 2013 determination letter, regarding FBI Request No. 1161297-000, to the new address provided in the district court complaints.  Hardy Decl. at 19; Hardy Ex. L.  As a result of the litigation, FBI re-

---

[2] The Court does not address the use of Exemption 1 due to the declassification of the relevant documents, and given that Exemption 1 was withdrawn; the documents were instead reprocessed and deemed protected under Exemptions j(2), 6, 7(C), and (7)(D).  Hardy Decl. at ¶¶ 16, 17; Hardy Exs. J, K.

reviewed the documents responsive to the FBI Request No. 1161297-000.  Hardy Decl. at ¶ 20;

Hardy Ex. M.  By letter dated February 15, 2017, the FBI advised plaintiff that it was releasing 81

pages, in full or in part, again citing Privacy Act Exemption (j)(2) and FOIA Exemptions 6, 7(C),

and (7)(D) for the withholdings.  *Id.*  The FBI also informed plaintiff that 52 pages were referred

to DEA, where the particular documents originated.  Hardy Decl. at ¶ 20, nn.3, 4; Hardy Ex. M.

## II. STANDARD OF REVIEW

In a FOIA case, a district court reviews the agency's decisions *de novo* and "the burden is

on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); *Military Audit Project v. Casey*, 656

F. 2d 724, 738 (D.C. Cir. 1981). "[T]he vast majority of FOIA cases can be resolved on summary

judgment." *Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *Defenders*

*of Wildlife v. 77 U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). The party seeking summary judgment "bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary

judgment, the non-moving party must "designate specific facts showing that there is a genuine

issue for trial." *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a

reasonable fact-finder could find for the non-moving party; a fact is "material" only if it can affect

the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy,* 813 F. 2d 1236, 1241 (D.C. Cir. 1987). In the FOIA context, "the sufficiency of the agency's identification or retrieval procedure" must be "genuinely in issue" in order for summary judgment to be inappropriate. *Weisberg v. DOJ*, 627 F. 2d 365, 371 n.54 (D.C. Cir. 1980) (internal quotation marks omitted). In assessing a defendant's motion, a court must "view the facts and draw reasonable inferences in the light most favorable to plaintiff." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

In FOIA cases, "[s]ummary judgment may be granted on the basis of agency affidavit [,]" when those affidavits "contain reasonable specificity of detail rather than merely conclusory statements," and when "they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F. 3d 208, 215 (D.C. Cir. 2013) (quoting *Consumer Fed'n of Am. v. Dep't of Agric.*, 455 F. 3d 283, 287 (D.C. Cir. 2006)); *see also Peavey v. Holder*, 657 F. Supp. 2d 180, 188 (D.D.C. 2009) (quoting *Schrecker v. U.S. Dep't of Justice*, 217 F. Supp. 2d 29, 33 (D.D.C. 2002)). Agency declarations are afforded a "presumption of good faith" and can be rebutted only with evidence that the agency did not act in good faith. *Defenders of Wildlife v. Dep't of Interior*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004). However, a plaintiff cannot rebut the good faith presumption afforded to an agency's supporting affidavits through "purely speculative claims . . . ." *SafeCard Servs., Inc. v. SEC*, 926 F. 2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F. 2d 770, 771 (D.C. Cir. 1981)).

In a Privacy Act case, a court may similarly rely on agency affidavits or declarations to enter summary judgment. *See Chambers v. U.S. Dep't of the Interior*, 568 F. 3d 998, 1003 (D.C. Cir. 2009). At the summary judgment stage, where the agency has the burden to show that it acted in accordance with the statute, a court may rely on a reasonably detailed affidavit, setting forth the

search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched. *Jimenez v. Executive Office for U.S. Attorneys*, 764 F. Supp. 2d 174, 179–80 (D.D.C. 2001) (citing *Chambers,* 568 F. 3d at 1003). Even if the nonmoving party fails to respond to the motion for summary judgment, or portions thereof, a court cannot grant the motion for the reason that it was conceded. *Winston & Strawn, LLP v. McLean*, 843 F. 3d 503, 505 (D.C. Cir. 2016). The burden is always on the movant to demonstrate why summary judgment is warranted. *Id.* A district court "must determine for itself that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law, and then 'should state on the record the reasons for granting or denying the motion.' " *Id.* at 508–09 (quoting Fed. R. Civ. P. 56(a)).

## III.   DISCUSSION

### A. Adequacy of Searches

Plaintiff disputes the adequacy of defendants' searches. USMS Compl. at 5, 6; FBI Compl. at 5; DEA Compl. at 5; Pl.'s Opp. at 3–4, 6; Pl.'s Surreply at 2–3. A defendant bears the initial burden of showing that its searches were adequate. *Weisberg*, 745 F.2d at 1485. Government agencies must demonstrate that they conducted searches reasonably calculated to uncover all relevant documents. *Peavey*, 657 F. Supp. 2d at 187 (citing *Weisberg*, 745 F.2d at 1485). "[A]n agency could demonstrate appropriate, reasonable search methods by demonstrating a 'systematic approach to document location.' " *Nance v. U.S. Federal Bureau of Investigation*, 845 F. Supp. 2d 197, 202 (D.D.C. 2012) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F. 2d 57, 68 (D.C. Cir. 1990)).

The adequacy of an agency's search is measured by a standard of reasonableness under the attendant circumstances. *Truitt v. U.S. Dep't of State*, 897 F. 2d 540, 542 (D.C. Cir. 1990). To satisfy its burden, the agency must show that it "has conducted a search reasonably calculated to uncover all relevant documents." *Elliott v. U.S. Dep't of Agric.*, 596 F. 3d 842, 851 (D.C. Cir.

2010) (quoting *Weisberg*, 705 F.2d at 1344).  It may base its showing on affidavits or declarations submitted in good faith, *see Truitt*, 897 F.2d at 542, provided that these affidavits or declarations explain in reasonable detail the scope and method of the search, *see Morley v. CIA*, 508 F. 3d 1108, 1116 (D.C. Cir. 2007) (citations omitted). "In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance . . . ." *North v. U.S. Dep't of Justice*, 774 F. Supp. 2d 217, 222 (D.D.C. 2011) (citing *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982)).  Agencies must show that their searches for responsive records "us[ed] methods which can be reasonably expected to produce the information requested." *Oglesby*, 920 F. 2d at 68; *see also Campbell v. Dep't of Justice*, 164 F. 3d 20, 27 (D.C. Cir. 1998).

"A search does not have to be exhaustive, and whether a search is adequate is determined by methods, not results . . . [and an] agency's failure to locate a specific responsive document will not, on its own, render an otherwise reasonable search inadequate." *Nance*, 845 F. Supp. 2d at 201 (citing *Brown v. FBI*, 675 F. Supp. 2d 122, 125–26 (D.D.C. 2009)).  There is no requirement that an agency search every record system in response to a request; rather, it may limit its search to those locations where responsive documents are likely maintained. *Porter v. CIA*, 778 F. Supp. 2d 60, 69 (D.D.C. 2011).  However, if the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Beltranena v. Clinton*, 770 F. Supp. 2d 175, 183 (D.D.C. 2011) (quoting *Truitt*, 897 F.2d at 542); *see also Valencia–Lucena v. U.S. Coast Guard*, 180 F. 3d 321, 326 (D.C. Cir. 1999) (stating that summary judgment is inappropriate "if a review of the record raises substantial doubt" about the adequacy of the search (citation omitted)).  Here, there is no substantial doubt raised.

In support of their request for summary judgment, defendants have submitted the declaration of William Bordley, an Associate General Counsel and FOIA/PA officer of USMS.

Bordley Decl. at ¶ 1.  Bordley avers that USMS conducted a systematic and comprehensive search of its records in response to plaintiff's Requests.  *Id.* at 2–4.  Plaintiff's First USMS Request sought all records regarding his person.  *Id.* at ¶ 2; Bordley Ex. A.  In response to the First USMS Request, it searched the Justice Detainee Information System Prisoner Processing and Population Management/Prisoner Tracking System ("PPM/PTS"), JUSTICE/USM 005, and the Warrant Information Network ("WIN"), JUSTICE/USM-007.  Bordley Decl. at ¶ 4.  These systems of records store both electronic and paper records pertaining to the custody of USMS prisoners and individuals who USMS investigated pursuant to a state or federal arrest warrant or other judicial process.  *Id.*

Bordley states that any records responsive to plaintiff's First USMS Request would be maintained in the USMS PPM/PTS and/or WIN.  *Id.*; *see also* 72 F.R. 33515, 33519 (June 18, 2007); 28 U.S.C. § 566; 28 C.F.R. § 0.111(a), (j), (k), and (q)).  These systems of records are exempt from the access provisions of the Privacy Act pursuant to 5 U.S.C. § 552a (j)(2).  *Id.* at ¶ 5; *see also* 28 C.F.R. § 16.101(a), (b), (q), (r). Therefore, to ensure maximum access, plaintiff's records were further processed under FOIA.  Bordley Decl. at ¶ 5.  USMS used the following search terms: (1) plaintiff's name(s), (2) date of birth, and (3) his USMS registration number.  *Id.* This search identified the Eastern District of North Carolina, Southern District of Texas, and the Justice Prisoner and Alien Transportation System, as the districts where plaintiff was arrested, held, and/or transported by the USMS.  *Id.* at ¶ 6.  Thereafter, personnel in all of the aforementioned districts were contacted and asked to conduct respective searches by use of plaintiff's name(s) and personal identifiers. *Id.*  As a result of these searches, 77 responsive pages were found.  *Id.* at ¶ 7; Bordley Ex. C.

Plaintiff's Second USMS Request sought a copy of an arrest warrant for a probation violation he believes was served upon him by the USMS.  Bordley Decl. at ¶ 10; Bordley Ex. F. USMS then a conducted responsive search of the Eastern District of North Carolina and Southern District of Texas to determine whether those Districts maintained any such warrant.  Bordley Decl. at ¶ 11.  A search by the districts' personnel located no records responsive to plaintiff's Second USMS Request.  Bordley Decl. at 12; Bordley Ex. G.  On November 7, 2011, OIP disclosed three pages in full and one page with limited redactions pursuant to Exemption 7(C).  Bordley Decl. at 13; Bordley Ex. H.

In support of its motion, defendants also include a declaration submitted by David Hardy. Hardy is the Section Chief of the Record/Information Dissemination Section of the FBI.  Hardy Decl. at ¶ 1. Hardy avers that the FBI also conducted reasonable and adequate searches for records. *Id.* at 7–13.  He sets forth facts to support the contention that the FBI has made good faith efforts to conduct searches for the requested records, using methods and searching locations which could have been reasonably expected to produce responsive information.  *Id.*

Plaintiff's FBI Request sought information regarding the alleged probation violation, including photographs, personal identifying information, and fingerprint class and pattern class. *Id.* at ¶ 7; Hardy Ex. 7.  After plaintiff supplied additional identifying information, including a DOJ-361 form and his CIR, FBI began searching the indices to the CRS for information responsive to his FBI Request.  *Id.* at ¶ 10; Hardy Ex. D. Hardy describes in detail the CRS and the other internal electronic, integrated case management systems including, the Automated Case Support ("ACS"), and The Universal Index ("UNI"), and further explains the reasons why the chosen databases were searched.  Hardy Decl. at 8–11.

13

The FBI Record Information Dissemination Section ("RIDS") conducted a search of the CRS using two variations of plaintiff's legal name, "Guillermo Huertas Sanchez" and "Guillermo Sanchez Huertas," as well as his three known aliases ("Mono Renzo," "Guillermo Huerta Sanchez," and "Jorge Luis Garza") and a variation of one of the aliases ("Jorge Garza") in order to identify investigatory files responsive to plaintiff's FBI Request and subject to FOIA. *Id.* at ¶¶ 28–32. The FBI's search also included variations of a phonetic breakdown of plaintiff's first, middle and last name. *Id.* The FBI further searched under plaintiff's date of birth and social security number. *Id.*

Based on its searches, the FBI located no records in its "main files" but did locate records within "reference files." *Id.* at ¶ 4. FBI originally identified a total of 137 pages. *Id.* Of these 137 pages, 52 of these pages originated with the DEA and were therefore referred to the DEA for its review, disclosure determination, and direct response to plaintiff. *Id.* The remaining 94 pages were processed by the FBI or the DEA for release. *Id.* The FBI ultimately determined that these reference file records were not responsive to plaintiff's Request parameters, however, it nonetheless processed the records and provided 81 of them to plaintiff. *Id.* After certain directives from OIP, Hardy states that the FBI re-reviewed the 137 originally identified pages and once again released 81 pages in full or in part. *Id.* at ¶ 20; Hardy Ex. M.

Lastly, defendants submit a declaration from Katherine Myrick, the Chief of the FOIA/PA Unit ("SARF"), and FOIA Management Section ("SAR"), with DEA. Myrick Decl. at ¶ 1. The DEA was involved in this case because it received a referral subsequent to the FBI search, which the Court deems appropriate. Myrick Decl. at ¶ 5; Myrick Ex. A.; *See, e.g., Canning v. United States Department of State*, 134 F. Supp. 3d 490, 510 (D.D.C. 2015); *British Airports Authority v. CAB*, 531 F. Supp. 408, 417–418 (D.D.C. 1982). DEA was tasked with processing and

consultation.  *Id.*  FBI forwarded seven documents, totaling 52 pages, that originated with DEA. Myrick Decl. at ¶ 5; Myrick Ex. A.  Additionally, FBI sent one (FBI-sourced) document for consultation and review, which was reviewed and later returned back to the FBI.  *Id.*

DEA conducted a thorough review of all referred records.  Myrick Decl. at 3–10.  Myrick describes the relevant system of records where these documents originated, namely, the DEA Investigative Reporting and Filing System ("IRFS"), Justice/DEA-008.  *Id.* at ¶¶ 14–15.  She explains the nature of the system and the responsive materials which originated therein, namely, the DEA Report of Investigation ("ROI").  *Id.* at 3–4.  DEA released portions of one ROI page to plaintiff, which Myrick describes in detail.  *Id.*  Further, Myrick explains that the remaining 8 pages of the ROI were withheld pursuant to PA Exemption (j)(2), and some combination of FOIA Exemptions 7(C), 7(D), 7(E), and/or 7(F).  *Id.* at 4–9.  It further determined that 43 of the pages were unresponsive, and therefore, they were returned to the FBI.  Myrick Decl. at 8; Myrick Ex. D.

Defendants' declarations are sufficient to establish that the agencies conducted appropriate and reasonable searches and/or review and determination. The declarations discuss the locations and systems used to conduct the search, why relevant information would potentially be in those systems, the scope of the searches, and how files are generally retrieved therefrom.  Bordley Decl. at 2–4; Hardy Decl. at 7–13; Myrick Decl. at 3–10.  Defendants specifically detail the offices, methods, terms, and results of the searches conducted on plaintiff's behalf.  *See id.*  In addition to being reasonably detailed, the declarations appear to have been made in good faith, and to adequately attest that these searches were thorough and comprehensive. *See id.* Therefore, the Court finds that defendants' searches was reasonable under the attendant circumstances. *See White v. DOJ*, 840 F. Supp. 2d 83, 89 (D.D.C. 2012).

Having "made a *prima facie* showing of adequacy, the burden [then] shifts to plaintiff to

provide . . . evidence sufficient to raise 'substantial doubt' concerning the adequacy of the agency's

search." *Schoenman v. FBI*, 764 F. Supp. 2d 40, 46 (D.D.C. 2011) (quoting *Iturralde v.*

*Comptroller of Currency*, 315 F. 3d 311, 314 (D.C. Cir. 2003)).  In support of his contention that

defendants did not conduct adequate searches, plaintiff asks

> [h]ow would it be possible that a probation violation warrant is listed as
> existing, that would be executed by the United States Marshals Service to
> take plaintiff into custody on July 6, 2001, and now mysteriously is
> unavailable?  It becomes clearly apparent that either the fingerprint
> comparisons do not pertain to plaintiff, or the wrong Jorge Luis Garza was
> arrested on the force of the probation violation warrant.  Somewhere in the
> United States Marshals' documents, that question needs to be resolved
> through total disclosure of all documents relating to the probation violation
> warrant.

USMS Compl. at 5–6.  Plaintiff is essentially arguing that, because there is a reference in his NCIC

report and/or other documents regarding a "probation violation" warrant, and because one was

ostensibly served on him approximately 17 years ago, that there must be a record of it in the

defendants' systems. *Id.*

He makes the same argument regarding his request for photographs and video surveillance,

fingerprinting evidence, and NADDIS No. 3944994. Pl.'s Opp. at 2 ¶ 3, 3 ¶ 1, 4 ¶ 1, 5 ¶ 2. Plaintiff

reasons that, if the agencies conducted detailed and comprehensive searches, then these searches

would necessarily render information responsive to his Requests, revealing documents confirming

his own identity, or the identity of another individual with a similar name. *Id.*  It appears that

plaintiff believes that defendants are intentionally ignoring existing responsive material in order

to conceal the fact that they mistook his identity of another "Jorge Luis Garza," and therefore,

mistakenly arrested him for a probation violation. *Id.*  As stated, defendants made a correction to

plaintiff's NADDIS number and associated information, regarding his status of a violator of

probation.  Defs.' Reply at 2 ¶ 2, 2 n.1; Pl.'s Surreply at 2–3; Pl.'s Mot. for Dflt. Ex. A.  Plaintiff believes that because defendants made this correction, it lends credibility to his theory that defendants are concealing related viable information.  Pl.'s Surreply at 2–3.  Plaintiff provides no evidence to support this theory, and has fallen short in proving that defendants have failed to adequately search.  "Rather, [p]laintiff must show that [d]efendants have failed to fully discharge their obligations under the FOIA and Privacy Act, which cannot be shown by merely referring to [p]laintiff's belief that he was—and therefore is—entitled to certain documents, or that [d]efendants are simply perpetrating a large-scale fraud against him. *Willis v. U.S. Dept. of Justice*, 581 F. Supp. 2d 57, 67 (D.D.C. 2008); *see also Houser v. Church*, 271 F. Supp. 3d 197, 204 (D.D.C. 2017).

A civil action under FOIA or the Privacy Act is intended to obligate a federal government agency to provide access to records it has created or maintained.  *Kissinger v. Reporters Committee*, 445 U.S. 136, 152 (1980); *Schoenman*, 573 F. Supp. at 134–35.  An agency need not answer questions presented in the guise of a document request, *id.* at 140, nor may a requester expand the scope of his request during the course of litigation. *See, e.g.*, *Donoghue v. Office of Info. Policy, U.S. Dep't of Justice*, 157 F. Supp. 3d 21, 23 n.2 (D.D.C. 2016); *see also Coss v. U.S. Dep't of Justice*, 98 F. Supp. 3d 28, 34 (D.D.C. 2015).  Without adequate supporting evidence, plaintiff leaves the Court in a position to speculate, which it cannot do. "[I]t is well settled that conclusory allegations unsupported by factual data will not create a triable issue of fact." *Broaddrick v. Exec. Office of President*, 139 F. Supp. 2d 55, 65 (D.D.C. 2001) (internal quotation marks and citation omitted).  Plaintiff's bare allegations that defendants have either negligently or intentionally failed to provide information is insufficient to overcome the presumption of good faith accorded to agency declarations. *See id.*

17

Plaintiff attempts to contest the adequacy of the search by arguing that his arrest warrant was improper, and that he was mistakenly arrested.  Pl.'s Surreply at 4–5; USMS Compl. at 3 ¶ 2. FOIA and the Privacy Act do not offer a remedy for alleged violations of constitutional rights, *see Johnson v. Exec. Office for U.S. Attorneys*, 310 F. 3d 771, 777 (D.C. Cir. 2002), even if plaintiff intends to use the requested records to support a challenge to his criminal conviction, *see, e.g., Clay v. U.S. Dep't of Justice*, 680 F. Supp. 2d 239, 248 (D.D.C. 2010).  Furthermore, the public record reveals that, regardless of the existence, or lack thereof, of a violation of probation arrest warrant, plaintiff was arrested, and warrants were issued, in furtherance of *other charges* personally associated with plaintiff. *See USA v. Vallejo, et. al*, no. 4:99-cr-00455-2 (S.D. TX Aug. 29, 1999) at Arrest Warrant [ECF No. 192].

Here, the agencies have averred that they have provided all releasable information after thorough searches.  Bordley Decl. at ¶ 18; Hardy Decl. at ¶¶ 6, 7, 35, 36, 74, 75.  USMS has clearly stated that no probation violation warrant was found.  Bordley Decl. at ¶ 25.  Merely because the searches did not result in the information plaintiff seeks does not render them invalid.  *Fischer v. U.S. Dept. of Justice*, 596 F. Supp. 2d 34, 43 (D.D.C. 2009) (citation omitted).  FOIA requires disclosure only of records "for which agencies have chosen to retain possession or control." *Weisberg*, 745 F.2d at 1363 (internal alterations omitted) (citing *Kissinger*, 445 U.S. at 151 (1980)).  The adequacy of a search is not determined by its results, *but by the method of the search itself.  Weisberg*, 745 F.2d at 1485 (emphasis added).  Plaintiff has failed to rebut defendants' showing of a good faith search, therefore, the Court now turns to the claimed Exemptions.

B. Exemptions

    i.    Privacy Act Exemption: 5 U.S.C. § 552a(j)(2) ("Exemption (j)(2)").

DEA relies on Privacy Act Exemption (j)(2) for certain withholdings. Myrick Decl. at ¶¶ 14–15. The Privacy Act provides that "[e]ach agency that maintains a system of records shall . . . upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him . . . to review the record and have a copy made of all or any portion thereof in a form comprehensible to him." 5 U.S.C. § 552a(d)(1). Exemption (j)(2) applies, in relevant part, to records that are (1) stored in a system of records that has been designated by an agency to be exempt from the Privacy Act's disclosure requirements, and (2) stored in a system that is "maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws," and that consists of "information compiled for the purpose of a criminal investigation." 5 U.S.C. § 552a(j)(2)(A).

Here, DEA withheld portions of plaintiff's ROI, which originated in IRFS. Myrick Decl. at ¶¶ 14–15. Myrick attests that the withheld information was gathered pursuant to DEA's law enforcement responsibility, including the Controlled Substances Act, 21 U.S.C. § 801, *et seq*. *Id.* DEA's IRFS has been made exempt from the Privacy Act access provision pursuant to 5 U.S.C. § 552a(j)(2). *Id.*; *see also* 28 C.F.R. § 16.98(c)(2). This statutory mandate has been consistently upheld by this Court. *See, e.g., Djenasevic v. Executive Office of United States Attorneys*, 319 F. Supp. 3d 474, 484 (D.D.C. 2018) (holding that investigative files maintained in DEA's IRFS were properly withheld under Exemption (j)(2)), *appeal filed*, No. 18-5262 (D.C. Cir. Aug. 27, 2018); *Adionser v. Department of Justice*, 811 F. Supp. 2d 284, 301 (D.D.C. 2011) (finding same). Defendants have thus established that Privacy Act Exemption (j)(2) applies to the criminal

investigation records, namely, portions of plaintiff's ROI, which originated in the IRFS.  *See* Myrick Decl. at ¶¶ 14–15.

ii.    <u>FOIA Exemptions: 5 U.S.C. § 522(b)(6) ("Exemption 6") & 5 U.S.C. §<br>552(b)(7)(C) ("Exemption 7" & "Exemption 7(C)")</u>

The FBI, USMS, and the DEA invoke FOIA Exemptions 6 and/or 7(C) for certain withholdings.  Hardy Decl. at 17–27; Bordley Decl. at 4–6; Myrick Decl. at 6–7.  To properly invoke a subsection of § 552(b)(7), a threshold test must first be satisfied.  Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes . . ."  5 U.S.C. § 552(b)(7); *see FBI v. Abramson*, 456 U.S. 615, 622 (1982).  In assessing whether records are compiled for law enforcement purposes, the "focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding."  *Jefferson v. Dep't of Justice*, 284 F. 3d 172, 176–77 (D.C. Cir. 2002) (citations and internal quotations omitted).

The FBI, USMS, and DEA are all, by definition, criminal, investigatory, and/or regulatory enforcement agencies within the DOJ.  *See* 28 U.S.C. § 531, *et seq.*; 28 U.S. Code § 561; 21 U.S. Code 13 § 801, *et seq.*  All of the defendants' declarants have averred that the records withheld pursuant to Exemption 7 were compiled for law enforcement purposes. Hardy Decl. at 17–27; Bordley Decl. at 4–6; Myrick Decl. at 6–7.  Additionally, plaintiff's own purpose for filing this action is rooted in his interest in his criminal investigation and arrest records.  Pl.'s Opp. at 1–5; *see, e.g. Blackwell v. FBI*, 646 F. 3d 37, 40 (D.C. Cir. 2011) ("[I]t is especially convincing [that the requested information was compiled for law enforcement purposes] in this case because [plaintiff] explicitly sought records related to his own criminal prosecution."); *see also Roberts v. FBI*, 845 F. Supp. 2d 96, 103 (D.D.C. 2012) ("It is apparent from the nature of plaintiff's FOIA request that the information he seeks was compiled for law enforcement purposes, more

20

specifically, the criminal prosecution of [the] plaintiff.  Thus, the [agency] meets its initial burden

of establishing that the records at issue are law enforcement records for purposes of Exemption

7.").   Defendants have therefore met this threshold burden, and the Court concludes that

defendants' withheld records, or portions of records, were compiled for law enforcement purposes.

The Court may then address the invocation of the Exemption.  *See* 5 U.S.C. § 552(b)(7); *see also*

*Abramson*, 456 U.S. at 622.

The agencies rely upon both Exemptions 7(c) and/or 6, which are foundationally similar.

*See Seized Prop. Recovery Corp. v. United States Customs & Border Prot.*, 502 F. Supp. 2d 50,

56 (D.D.C. 2007); *see generally* Hardy Decl. at 17–27; Bordley Decl. at 4–6; Myrick Decl. at 6–

7.  Exemption 6 protects information about individuals in "personnel and medical files and similar

files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."

5 U.S.C. § 552(b)(6).   All information that "applies to a particular individual" qualifies for

consideration under this exemption.  *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595,

602 (1982); *New York Times Co. v. NASA*, 920 F.2d 1002, 1005 (D.C. Cir. 1990) (en banc); *Chang*

*v. Dep't of Navy*, 314 F. Supp. 2d 35, 42–43 (D.D.C. 2004).

Information need not be particularly intimate to merit protection under Exemption 6, which

shields from disclosure "personal information, such as names and addresses," that, if released,

"would create a palpable threat to privacy."  *Prison Legal News*, 787 F. 3d 1142, 1147 (D.C. Cir.

2015) (quoting *Judicial Watch*, 449 F.3d at 152).   Indeed, the Exemption "has been construed

broadly to cover essentially all information sought from Government records that 'appl[y] to a

particular individual.' " *Pinson v. U.S. Dep't of Justice*, 202 F. Supp. 3d 86, 99 (D.D.C. 2016)

(quoting *Wash. Post Co.*, 456 U.S. at 602).  A requester must establish an overriding public interest

in disclosure by showing that the information is necessary to "shed any light on the [unlawful]

conduct of any Government agency or official." *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 772–73 (1989); *accord SafeCard Services, Inc.*, 926 F. 2d at 1206.

Similarly, Exemption 7(C) protects from disclosure records compiled for law enforcement purposes to the extent that their disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Again, a court must balance the privacy interests in nondisclosure against the public interest in "shed[ding] light on an agency's performance of its statutory duties." *Reporters Comm.*, 489 U.S. at 762, 773. The proper application of "privacy exemptions [6 and 7(C)] turns on a balance of 'the individual's right of privacy against the basic policy of opening agency action to the light of public scrutiny.' " *CEI Wash. Bureau, Inc.*, 469 F. 3d 126, 128 (D.C. Cir. 2006) (quoting *Dep't of State v. Ray*, 502 U.S. 164, 175 526 (1991)). Thus, when a requester seeks such information, an agency must conduct a balancing test to determine if releasing the information would constitute a "clearly unwarranted invasion of personal privacy[,]" by weighing the privacy interest in non-disclosure against any qualifying public interest in disclosure. *Wash. Post Co.*, 456 U.S. at 596 n. 1. It is this balancing test and "not the nature of the files in which the information was contained [that] limit[s] the scope of the exemption." *National Ass'n of Home Builders v. Norton*, 309 F. 3d 26, 33 (D.C. Cir. 2002).

" '[B]ecause Exemption 7(C) permits withholding of such records if disclosure would constitute an unwarranted invasion of personal privacy, while Exemption 6 requires a clearly unwarranted invasion to justify nondisclosure, Exemption 7(C) is more protective of privacy than Exemption 6 and thus establishes a lower bar for withholding material.' " *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F. 3d 1, 6 (D.C. Cir. 2011) (internal quotations omitted). Despite the differences between Exemptions 6 and 7(C), "the privacy inquiry for each is 'essentially the same[,]' " with the difference being " 'the magnitude of the public interest that is

22

required to override the respective privacy interests protected by the exemptions.' " *Seized Prop.*

*Recovery Corp.*, 502 F. Supp. 2d at 56 (citations omitted).  If an agency meets its burden to justify

withholding information under Exemption 6, it has also met the "lighter burden" under Exemption

7(C).  *Id.* at 60.

Here, pursuant to Hardy's comprehensive *Vaughn* declaration, *see Vaughn v. Rosen*, 484

F. 2d 820 (D.C. Cir. 1973), FBI withheld the following pursuant to Exemptions 6 and 7(C): (1)

names of FBI special agents and support personnel, (2) third-parties of criminal investigative

interest, (3) other third-parties (other agency employees and witnesses mentioned within the

investitive files), (4) sources/informants, and (5) local law enforcement agents.  Hardy Decl. at

19–27.  These records included electronic communications ("ECs"), effectiveness forms ("FD-

515s"), source interview information forms ("FD-302s"), personal criminal information reports,

state exhibits with third-party information, and other investitive/intelligence information reports.

*Id.* at ¶¶ 40, 47, 49, 51, 53, 55, 57.  Fifty-three pages were withheld in full, or in part, pursuant to

Exemptions 6 and 7(C).  *Id.* at 18 n.9, 19 n.10, 21 n.11, 22 n.12, 23 n.13, 24 n.14, 26 n.15, 35–6.

USMS also withheld information pursuant to Exemption 7(C).  *Id.* at 4–6.  Pursuant to

Bordley's *Vaughn* declaration, the information withheld revealed the names and telephone

numbers of law enforcement personnel who prepared or assisted with the investigation, arrest,

an/or maintained custody of plaintiff.  *Id.* at ¶ 16.  USMS also withheld information regarding

third-parties and their personal contact information.  *Id.* at ¶ 17.  USMS released 77 pages in total,

with 29 pages released in full, and 48 pages were released with certain redactions.  *Id.* at ¶ 18;

Bordley Exs. C, G.  OIP disclosed three USMS document pages in full and one page was disclosed

with limited redaction.  Bordley Decl. at ¶ 18; Bordley Ex H.  No documents were withheld in full.

Bordley Decl. at ¶ 18; Bordley Exs. C, G, H.

Lastly, DEA relied on Exemption 7(C). Myrick Decl. at 6–7; Myrick Ex. E. The only responsive DEA-sourced document uncovered during the searches was plaintiff's nine-page ROI. Myrick Decl. at 3–4. Pursuant to the Myrick declaration, and attached *Vaughn* Index, the identities and contact information of DEA agents, and third-parties of investigatory interest or involvement, were redacted from the released ROI. Myrick Decl. at ¶¶ 17, 18, 20; Myrick Ex. E. Therefore, eight pages were withheld, and one page was released with redactions. Myrick Decl. at ¶¶ 6, 13.

The Court agrees that disclosure regarding personal information of law enforcement personnel may hinder the ability to conduct ongoing investigations, may lead to unwarranted harassment, and may otherwise cause embarrassment and be an invasion of privacy, as contemplated by the exemptions. *See, e.g., Banks v. U.S. Dep't of Justice*, 813 F. Supp. 2d 132, 144 (D.D.C. 2011) ("Public identification of [law enforcement personnel] could conceivably subject them to harassment and annoyance in the conduct of their official duties and in their private lives." (internal quotation marks omitted)). These concerns significantly outweigh what little benefit the public may gain with this information as to its understanding of agency operations. *See, e.g., Schoenman*, 763 F. Supp. 2d at 198 (finding appropriate the withholding of information about FBI agents and support personnel, non-FBI federal government personnel, local and foreign law enforcement personnel, third-parties of investigative interest, third-parties who provided information to the FBI and third-parties incidentally mentioned in FBI records).

Law enforcement personnel conducting investigations have a well-recognized and substantial privacy interest in withholding information about their identities, *see, e.g., Nat'l Whistleblower Ctr. V. Dep't of Health and Human Srvs.*, 849 F. Supp. 2d 13, 28 (D.D.C. 2012); *Marshall v. FBI*, 802 F. Supp. 2d 125,134 (D.D.C. 2011). Redaction of the names of federal law enforcement officers and support personnel under similar circumstances has been routinely upheld.

*See, e.g., Pray v. Dep't of Justice*, 902 F. Supp. 1, 3 (D.D.C. 1995), *aff'd in relevant part*, 1996 WL 734142 (D.C. Cir. Nov. 20, 1996); *Lesar v. United States Dep't of Justice*, 636 F. 2d 472, 487 (D.C. Cir. 1980).

This Circuit has consistently held that Exemption 7(C) protects the privacy interests of all persons mentioned in law enforcement records, including investigators, suspects, witnesses and informants, *see Schrecker*, 349 F. 3d 657 at 661 (citing cases), and has determined that such third-party information is "categorically exempt" from disclosure under Exemption 7(C), in the absence of an overriding public interest in its disclosure. *Nation Magazine, Washington Bureau v. United States Customs Service*, 71 F. 3d 885, 894, 896 (D.C. Cir. 1995) (acknowledging the "obvious privacy interest" cognizable under Exemption 7(C) and extending this interest "to third parties who may be mentioned in investigatory files"); *accord Fischer*, 596 F. Supp. 2d at 46.

The disclosure of the names of third-party individuals mentioned in law enforcement files would serve a significant public interest only where "there is compelling evidence that the agency denying the FOIA/PA request is engaged in illegal activity," and that the information sought "is necessary in order to confirm or refute that evidence." *Davis v. Dep't of Justice*, 968 F. 2d 1276, 1282 (D.C. Cir. 1992). Plaintiff demonstrates no such public interest here with respect to either the law enforcement personnel or the third-parties mentioned in responsive records. *See SafeCard Servs., Inc.*, 926 F.2d at 1206.

In opposition, plaintiff argues that he is not placing any information of third-parties at risk. USMS Compl. at 3, 6; Pl.'s Opp. at 4–6; Pl.'s Surreply at 2–3. Plaintiff uses this argument as a blanket opposition to all of plaintiff's invoked Exemptions. *See id.* Plaintiff seemingly posits that, because his attempt is to garner information only relating to his own person, that no third-party information will be revealed. *See id.* However, at the same time, he argues that he was mistakenly

25

identified as another person, and seeks information regarding that person, as he is under the assumption that he was illegally arrested and subsequently convicted as a result of identity confusion. Pl.'s Opp. at 2 ¶ 3, 3 ¶ 1, 4 ¶ 1, 5 ¶ 2. Therefore, assuming *arguendo* such information exists, he would be, by definition, seeking information regarding a third-party. The Court understands that plaintiff feels that he is in a "catch-22," as he seeks information regarding his identity, and potentially, if in existence, that of another individual with a similar name, however, to the extent that he seeks disclosure of this information to prove his purported innocence, FOIA/PA is not the suitable vehicle. Pl.'s Opp. at 2 ¶ 3, 3 ¶ 1, 4 ¶ 1, 5 ¶ 2; *see Clay*, 680 F. Supp. 2d at 248.

In order to overcome the protections of Exemptions 6 and 7(C) plaintiff "must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake," and that "the information is likely to advance that interest." *National Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004); *see Blackwell*, 646 F. 3d at 41. The public interest in disclosure "does not include helping an individual obtain information for his personal use" to overturn a conviction, which is certainly the intended purpose here. *Oguaju v. United States*, 288 F. 3d 448, 450 (D.C. Cir. 2002), *vacated and remanded on other grounds*, 541 U.S. 970, 124 (2004), *reinstated*, 378 F. 3d 1115 (D.C. Cir. 2004) (citation omitted); *see also Clay*, 680 F. Supp. 2d at 248 (rejecting the requester's assertion of a due process right to discovery in his criminal case as a basis for disclosure of records); *Johnson*, 310 F. 3d at 777 (holding that FOIA/PA does not offer a remedy for alleged violations of constitutional rights even if plaintiff intends to use the requested records to support a challenge to his criminal conviction).

26

It is clear that defendants conducted extensive searches by use of all of plaintiff's available personal information and identifiers, including, but not limited to, his associated system numbers, names, and aliases. Hardy Decl. at ¶¶ 28–32; Bordley Decl. at ¶ 5.  The available information regarding his own identity has been released. Myrick Decl. ¶ 38; Hardy Decl. ¶ 25, 74–5; Bordley Decl. at ¶ 18.

Plaintiff also seemingly argues that, because these investigations, arrest(s), and proceeding(s), occurred over a decade ago, that privacy interests will not be at risk. USMS Compl. at 3, 6; Pl.'s Opp. at 4–6; Pl.'s Surreply at 2–3.  Again, he provides this argument in opposition to all of defendants' stated Exemptions, not just 6 and 7(C). USMS Compl. at 3, 6; Pl.'s Opp. at 4–6; Pl.'s Surreply at 2–3.  The Court disagrees, as courts have held that the passage of time does not automatically diminish the protection of Exemptions 6 and 7(C). *See Reporters Comm.*, 489 U.S. at 763–64; *Nat'l Assoc. of Retired Federal Employees v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989), *cert. denied*, 494 U.S. 1078 (1990); *Assassination Archives and Research Center, Inc. v. C.I.A.*, 903 F. Supp. 131, 133 (D.D.C. 1995); *Maynard v. CIA*, 986 F.2d 547, 555 n.6 (1st Cir. 1993).  Given the expansive and complex safety concerns involving the underlying criminal investigation, the Court finds these privacy interests of continued importance. *See* Hardy Decl. at ¶ 6; *see Assassination Archives*, 903 F. Supp. at 133.

Defendants have shown that the FBI, DEA, and USMS, have all withheld information properly within the ambit of both Exemptions.  In each instance where the agencies employed Exemptions (b)(6) and/or (b)(7)(C), they weighed the adverse effects of the release of the information to the individuals involved against the potential benefit to the public, concluding that the interest in privacy was greater. Hardy Decl. at ¶¶ 44, 47, 48, 54; Bordley Decl. at ¶¶ 16, 17; Myrick Decl. at ¶ 19.

27

Therefore, defendants have justified the withholding of information through Exemptions 6 and 7(C). *See Lesar*, 636 F. 2d at 487. The defendants' declarations are specific as to what information withheld and why the privacy interests clearly outweigh any public interest in disclosure. The declarations are neither conclusory nor vague, and there is no evidence anywhere in the record of bad faith on the part of the agencies. *See id.*

iii.   FOIA Exemption: 5 U.S.C. § 522(b)(7)(D) ("Exemption 7(D)")

The FBI and DEA withheld and redacted information pursuant to Exemption 7(D). Hardy Decl. at 27–31; Myrick Decl. at 7–8. FOIA Exemption 7(D) protects from disclosure those records or information compiled for law enforcement purposes that:

> could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). There is no general "presumption that a source is confidential within the meaning of Exemption 7(D) whenever the source provides information [to a law enforcement agency] in the course of a criminal investigation." *Dep't of Justice v. Landano*, 508 U.S. 165, 181 (1993). Rather, a source's confidentiality must be determined on a case-by-case basis. *Id.* at 179–80. "A source is confidential within the meaning of [E]xemption 7(D) if the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." *Williams v. Fed. Bureau of Investigation*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (internal quotation marks and citation omitted).

FBI invoked FOIA Exemption 7(D) to protect confidential sources, including their source numbers and identifying information. Hardy Decl. at 27–31. FBI protected information under the

28

Exemption relating to portions of three pages.[3]  *Id.* at 29 n.17, 39 nn.18, 19.  These FBI sources assisted with criminal investigation(s) and were provided express guarantees of confidentiality. *Id.* at ¶¶ 59, 62, 65, 68.  According to the declarant, if such information were disclosed, it would have "chilling effect" which would place current and future investigations at risk, because "[i]ndividuals who provide information to the FBI should be secure knowing their assistance and identities will be held in confidence[]" without "fear of reprisal."  *Id.* at ¶ 61.  Revelation of such information could allow "his or her identity [to] be ascertained by persons knowledgeable of the FBI's investigations of [p]laintiff and others.  Furthermore, if the FBI disclosed his or her identity, the informant, as well as his or her family, could be subjected to embarrassment, humiliation, and/or physical or mental harm."  *Id.* at ¶¶ 61, 63, 64, 66, 68. The Court concurs and finds that the FBI properly protected confidential sources to whom the agency has assigned file numbers and permanent source symbol numbers.  *See id.*  This information is well within the ambit of Exemption 7(D).  *See Amuso v. U.S. Dept. of Justice*, 600 F. Supp. 2d 78, 98–9 (D.D.C. 2009).

DEA avers that its use of Exemption 7(D) is intended to protect one individual source, where confidentiality was clearly implied.  Myrick Decl. at ¶ 23.  This Exemption was applied to portions of eight pages of the plaintiff's ROI report.[4]  *See* Myrick Ex. E at 1 (item 3), 2 (item 2). The declaration states that "[t]he source was involved, and maintained a close relationship with, several individuals who trafficked in cocaine and engaged in other violent and illegal activities. The information provided by the individual related to the illicit trafficking in drugs by the [p]laintiff and others."  Myrick Decl. at ¶ 23.  This Court has extended the protection of 7(D) in

---

[3] The FBI's use of Exemption 7(D) has some cross-over with the invocation of Exemptions 6 and 7(C).  *See* Hardy Decl. at 21 n.11, 22 n.12, 26 n.15, 27 n.16, 29 n.17 (referencing Bates Nos. Garza 81, 93, 33).  The Court has already found that Exemptions 6 and 7(C) apply to the relevant withholdings, however, in the alternative, Exemption 7(D) is also applicable.

[4] DEA's use of Exemption 7(D) has some cross-over with the invocation of Exemption 7(C).  *See* Myrick Ex. E at 1 (items 2, 3, 4), 2 (items 2, 3), 3 (item 2).  The Court has already found that Exemption 7(C) applies to the relevant withholdings, however, in the alternative, Exemption 7(D) is also applicable.

nearly identical situations, where confidentiality was situationally implied. *See, e.g., Ortiz v. United States Department of Justice*, 67 F. Supp. 3d 109, 122 (D.D.C. 2014) (relying on *Stephens v. Dep't of Justice*, 26 F. Supp. 3d 59, 72 (D.D.C. 2014)); *see also, Amuso*, 600 F. Supp. 2d at 99–100. Therefore, the Court finds that DEA's use of Exemption 7(D) is also appropriate.

iv.    FOIA Exemption: 5 U.S.C. § 522(b)(7)(E) ("Exemption 7(E)")

Both the FBI and DEA employ Exemption 7(E) to justify withholdings. Hardy Decl. at ¶¶ 31–4; Myrick Decl. at ¶¶ 27–9. Exemption 7(E) protects from disclosure law enforcement records "to the extent that the production of such law enforcement records or information . . .would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Information relevant to law enforcement techniques and procedures is properly withheld where disclosure could reasonably lead to circumvention of laws or regulations. *See, e.g., Fisher v. United States Dep't of Justice*, 772 F. Supp. 7, 12 (D.D.C. 1991) (upholding FBI's decision to withhold information about law enforcement techniques where disclosure would impair effectiveness and, within context of documents, "could alert subjects in drug investigations about techniques used to aid the FBI"), *aff'd*, 968 F.2d 92 (D.C. Cir. 1992).

Here, FBI withheld information, in part or in full, from 30 pages of documents, pursuant to Exemption 7(E). Hardy Decl. at 33 n.20, 34 n. 21. Specifically, the FBI asserted Exemption (7)(E) to protect two types of information from disclosure. *Id.* at 31–4. First, FBI extended the Exemption FD-515s. *Id.* at ¶ 71. FD-515s are forms used by FBI supervising agents to report investigative accomplishments and statistically significant events throughout the course of a criminal investigation. *Id.* These forms include a portion itemizing and describing "Investigative

30

Assistance and Techniques Used." *Id.* The listed techniques/assistances are also each associated with a noted numerical rating which assesses their respective effectiveness. *Id.* Here, FBI redacted the details relating to the noted ratings for the techniques/assistances used in plaintiff's criminal investigation. *Id.* FBI indicates that redacting such information is meant estop those "involved in criminal violations [from changing] their activities and modus operandi" based on the success, or lack thereof, of the noted FBI strategies. *Id.*

Second, FBI withheld internal email addresses and a secure internal telephone number(s) of FBI agents and support personnel under Exemption 7(E).[5] *Id.* at ¶ 72. FBI avers that knowledge of the FBI's Information Technology system, and identifying information relating thereto, could disrupt internal processes and business, and allow outsiders to gain potentially unauthorized access to the internal systems, hack into, or otherwise interfere with the FBI's non-public intranet protocol. *Id.*

An agency may withhold information from disclosure where, as here, it would provide insight into its investigatory or procedural techniques. *Amuso*, 600 F. Supp. 2d at 101 (citing *Morley*, 508 F.3d at 1129). Likewise, internal website and email information may be properly withheld under Exemption 7(E). *See, e.g. Ford v. Department of Justice*, 208 F. Supp. 3d 237, 254 (D.D.C. 2016) (citing *Tracy v. U.S. Dep't of Justice*, 191 F. Supp. 3d 83, 96 (D.D.C. 2016), *aff'd*, 664 Fed. Appx. 8 (D.C. Cir. 2016). Based on the FBI's representations and absent evidence from plaintiff to rebut the presumption of good faith afforded to defendants, the Court concludes that the FBI properly withheld information under Exemption 7(E).

---

[5] The FBI's use of Exemption 7(E) in protection of personal contact information has some cross-over with the invocation of Exemptions 6 and 7(C). *See* Hardy Decl. at 21 n.11, 22 n.12, 34 n.21 (referencing Bates No. Garza '93). The Court has already found that Exemptions 6 and 7(C) apply to the relevant withholdings, however, in the alternative, Exemption 7(D) is also applicable.

DEA also relies on Exemption 7(E) to withhold portions of nine pages, redacting "G-DEP" codes. Myrick Decl. at ¶¶ 27–9. According to Myrick, these codes are used to track information associated with its criminal cases, such as the principal investigative target, the involvement of other agencies, the principal-controlled substance involved in the investigation, and the geographic scope of the criminal activity being investigated. *Id.* These codes also classify the priority of narcotic investigations, violator ratings, and the tracking of criminal patterns. *Id.* DEA has withheld these G-DEP codes in order to protect its internal strategy and procedure, and to avoid criminals from discovering this confidential information in an effort to avoid current or future apprehension. *Id.* at ¶ 29. DEA has established that this information is protected under Exemption 7. *See Adionser*, 33 F. Supp. 3d at 26–7 (holding that disclosure of DEA's G-DEP codes could reasonably be expected to risk circumvention of the law) (internal quotation marks and citation omitted).

v.   FOIA Exemption: 5 U.S.C. § 522(b)(7)(F) ("Exemption 7(F)")

Exemption 7(F) protects law enforcement information that "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). Exemption 7(F) has been invoked to protect the identities of informants, sources, and law enforcement personnel. *See Hammouda v. Dep't of Justice Office of Info. Policy*, 920 F. Supp. 2d 16, 26 (D.D.C. 2013) (citation omitted); *Fischer v. U.S. Dep't of Justice*, 723 F. Supp. 2d 104, 111 (D.D.C. 2010); *Blanton v. Dep't of Justice*, 182 F. Supp. 2d 81, 87 (D.D.C. 2002). The Exemption is also designed to specifically protect law enforcement officers and special agents. *See Blanton*, 182 F. Supp. at 87; *see also Jimenez v. F.B.I.*, 938 F. Supp. 21, 30–31 (D.D.C. 1996). Information withheld pursuant to Exemption 7(F) is also subject to withholding pursuant to Exemptions 6 and

7(C), the difference being that no balancing test is required for protection under Exemption 7(F). *See Raulerson v. Ashcroft*, 271 F. Supp. 2d 17, 29 (D.D.C. 2002).

Here, DEA invoked Exemption 7(F)[6] to protect the names of DEA special agents whose safety could potentially be at risk if their names were released. Myrick Decl. at ¶¶ 31–3. Myrick states that these agents are often involved with dangerous undercover operations, and often investigate individuals with propensity for violence. *Id.* at ¶ 32. These agents constitute the textbook definition of persons who warrant protection under Exemption 7(F). *Id.*; *See Hammouda,* 920 F. Supp. 2d at 26 (citation omitted). Therefore, the Court finds that DEA's reliance on Exemption 7(F) was appropriate.

vi.   <u>Segregability</u>

Under FOIA, "even if [the] agency establishes an exemption, it must nonetheless disclose all reasonably segregable, nonexempt portions of the requested record(s)." *Roth v. U.S. Dept. of Justice*, 642 F. 3d 1161, 1167 (D.C. Cir. 2001) (internal quotation marks and citation omitted). "[I]t has long been the rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Wilderness Soc'y v. U.S. Dep't of Interior*, 344 F. Supp. 2d 1, 18 (D.D.C. 2004) (quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F. 2d 242, 260 (D.C. Cir. 1977)). Thus, an agency must provide "a detailed justification and not just conclusory statements to demonstrate that all reasonably segregable information has been released." *Valfells v. CIA*, 717 F. Supp. 2d 110, 120 (D.D.C. 2010) (internal quotation marks and citation omitted).

---

[6] DEA's use of Exemption 7(F) has some cross-over with the invocation of Exemption 7(C). *See* Myrick Decl. at ¶ 31; Myrick Ex. E at 1 (item 2). The Court has already found that Exemption 7(C) applies to the relevant withholdings, however, in the alternative, Exemption 7(F) is also applicable.

However, "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" from the requester. *Sussman v. U.S. Marshals Serv.*, 494 F. 3d 1106, 1117 (D.C. Cir. 2007). Defendants represent that they have reviewed the responsive documents and deemed that all non-exempt and segregable information has been produced. Defs.' Mem. at 33–5; Hardy Decl. at 35–6, 74–5; Bordley Decl. at ¶ 18; Myrick Decl. at ¶¶ 34–5. These representations are sufficient. *See id.*

Defendants have also submitted thoroughly detailed declarations, in combination with supporting documentation, which support and satisfy FOIA's segregability requirement. *See, e.g., Johnson*, 310 F. 3d at 776; *Loving v. Dep't of Defense*, 550 F.3d 32, 41 (D.C. Cir. 2008); Defs.' Mem. at 33–5; Hardy Decl. at 35–6, 74–5; Bordley Decl. at ¶ 18; Myrick Decl. at ¶¶ 34–5.

Plaintiff has not provided any basis to question the good faith presumption afforded to these representations. *See Johnson*, 310 F. 3d at 776. Thus, the Court concludes that defendants have satisfied their segregability obligations under FOIA.

## IV.   PLAINTIFF'S MOTIONS

Plaintiff filed a motion for entry of default and judicial notice, which defendants have opposed as part of their reply in support of summary judgment. *See* Defs.' Reply at 2, 7–9. Plaintiff contends that defendants have ignored the Federal Rules of Civil Procedure and have further flouted the Court's scheduling order. Mot. for Dflt. at 1, 3. Plaintiff takes issue with defendants' requests for extensions to the scheduling order, and their failure to file a status report as mandated on August 16, 2017. *Id.*

Plaintiff also discusses the correction that defendants made to his NADDIS number and related information in the course of this litigation. *Id.* at 1–2. According to both parties, defendants

made this correction during the course of settlement discussions, as defendants were seeking potential dismissal of the case. *Id.*; Defs.' Reply at 2, 5.   Defendants were under the impression that this correction might warrant dismissal of the case as a *quid pro quo*, and plaintiff disagrees. Defs.' Reply at 2 n.1, 5; Pl.'s Mot. for Dflt. at 2.   Plaintiff also believes that this NADDIS correction, made during discussions outside of litigation, proves prior bad faith on the part of defendants, which somehow warrants default judgment on his behalf. Pl.'s Mot. for Dflt. at 1–2.

When a defendant has failed to plead, or otherwise defend against the complaint, a default judgment may be entered at the discretion of the Court. *See* Fed. R. Civ. P. 55.   Default judgment is usually appropriate only when a party has been totally unresponsive. *Brown v. Wachovia Bank*, 244 F.R.D. 16 (D.D.C. 2007) (citing *Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980) and *Savage v. Scales*, 310 F. Supp. 2d 122, 127 (D.D.C. 2004)).   Further, default judgment may only be entered against the United States, its agencies, or its officers "if the claimant establishes a claim or right to relief by evidence that satisfies the court." Fed. R. Civ. P. 55(d); *see also Ning Ye v. Holder*, 644 F. Supp. 2d 112, 121 (D.D.C. 2009).

Plaintiff has failed to provide sufficient evidence to support an entry of default against defendants.   Defendants responded to plaintiff's three complaints, and have responded to other motions and filings, in a reasonably timely and expeditious manner. *See, e.g.*, USMS Compl.; FBI Compl.; DEA Compl.; Defs.' Mot.; Defs.' Reply; Defs.' Notice of Appearance [ECF No. 11].   For those reasons, the request for entry of default is procedurally inappropriate on its face. *See* Fed. R. Civ. P. 55; *see also Swiss Inst. of Bioinformatics v. Glob. Initiative on Sharing All Influenza Data*, 49 F. Supp. 3d 92, 96 (D.D.C. 2014).

Further, defendants have, in fact, requested consideration of extensions and/or enlargements to the scheduling order, which is the right of any party. *See* Fed. R. Civ. P. 6(b);

35

Pl.'s Mot. for Dflt. at 3; *see, e.g.*, Defs.' Motion for Extension to File Late Status Report ("Defs.'

Mot. for Extn.") [ECF No. 29]; Defs.' Motion for Extension to Revise Briefing Schedule [ECF

No. 33]; Defs.' Motion for Extension to File Response/Reply to Plaintiff's Motion for Default

Judgment [ECF No. 39]. The Court found that defendants provided good cause for their requests,

and therefore, they were granted accordingly. *See, e.g.*, Min. Ord. (D.D.C. Aug. 30, 2017); Min.

Ord. (D.D.C. Oct. 3, 2017); Min. Ord. (D.D.C. Oct. 30, 2017).

Plaintiff's final argument in favor of default judgment is his reliance on defendants' failure

to adhere to the August 16, 2017 status report deadline. On August 25, 2017, defendants filed a

motion to accept a late status report. *See generally*, Defs.' Mot. for Extn. In the motion, defendants

provided a status on the case, and also provided a variety of reasons for the minor delay in filing

their status report. *Id.* at 1–2. The Court granted the motion, finding the slight delay to be

defensible. *See* Min. Ord. (D.D.C. Aug. 30, 2017). The Court still finds that this minor delay

caused no prejudice to plaintiff. Plaintiff provides no new information to alter this decision nor

would this type of singular and inconsequential delay necessitate the entry of default against any

party. *See, e.g., H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F. 2d 689, 691

(D.C. Cir. 1970).

To the extent that plaintiff seeks judgment in his favor based on defendants' attempts at

settlement discussions, the Court may not consider such information as proof on issues of liability.

*See, e.g., Farnum v. Colbert*, 293 A. 2d 279, 282 (D.C. Cir. 1972); Pl.'s Mot. for Dflt. at 1–2.

Additionally, and as stated, many of plaintiff's arrest records are also public record, and indicate

that he was wanted for and arrested on other charges on the date at issue. *See USA v. Vallejo, et.

al*, no. 4:99-cr-00455-2 (S.D. TX Aug. 29, 1999) at Arrest Warrant [ECF No. 192]. Therefore, it

is plausible that the probation violation notation on his criminal background reports was merely a

misnomer.  Plaintiff has not established any legal or factual basis for entering default based on this entry correction.

As part of the motion, plaintiff also asks the Court to take judicial notice of the recent decision in *Price v. U.S. Department of Justice Attorney Office*, 865 F.3d 676 (D.C. Cir. 2017).[7] Pl.'s Mot. for Dflt. at 4.  It is inappropriate for the Court to take judicial notice of the facts and conclusions of law in another opinion.  *See, e.g., Weinstein v. Islamic Republic of Iran*, 175 F. Supp. 2d 13, 16–17 (D.D.C. 2001).  The Court did, however, review the case, as it appears that plaintiff seeks to supplement his opposition to summary judgment with certain recent opinions and authority, which the Court will allow.  *See* Pl.'s Mot. for Dflt. at 4.  Therefore, for the stated reasons, plaintiff's motion for default and judicial notice is denied.

Plaintiff recently filed another motion for judicial notice and status of case, and shortly thereafter, a second motion for judicial notice.  *See generally*, Mot. for Jud. Notice; Sec. Mot. for Jud. Not.  As part of the first motion, plaintiff asks the Court to take judicial notice of three additional recent opinions, issued by the Supreme Court, the District of Columbia Circuit, and by this Court. Mot. for Jud. Notice at 2.  Again, it is improper for the Court to take judicial notice of the facts and conclusions of law in another opinion.  *See Weinstein*, 175 F. Supp. 2d at 16–17.  However, the Court has reviewed and considered those cases as supplements to plaintiff's proposed legal arguments and authority.

Plaintiff also asks that the Court to provide a status of the disposition.  *Id.* at 1.  The Court is now issuing its mandate herein regarding all pending motions, rendering plaintiff's request for status moot.  Therefore, the Court denies plaintiff's motion for judicial notice and status of case.

---

[7] *Price*, 865 F.3d at 680, held that the government could not deny a plaintiff's FOIA request for records related to his criminal case on the ground that he waived his right to seek that information as part of a plea agreement.  The Court has reviewed the case, but notes that it has no relevance to this matter as defendants have not alleged that plaintiff waived his right to file FOIA requests.

In plaintiff's second motion for judicial notice, he asks that the Court take judicial notice of another recent opinion issued by the District of Columbia Circuit. Sec. Mot. for Jud. Not. at 1. Again, the Court may not take judicial notice of these findings, *see Weinstein*, 175 F. Supp. 2d at 16–17, but it has fully reviewed and considered the opinion, as it has done with all case law submitted by plaintiff throughout this litigation. Therefore, the Court denies plaintiff's second motion for judicial notice.

## V. CONCLUSION

For the foregoing reasons, the Court concludes that defendants have provided sufficient factual detail that supports its position that it conducted reasonable and adequate searches of records for materials responsive to plaintiff's FOIA and Privacy Act Requests, and that the agencies properly withheld all documents pursuant to the applicable law and Exemptions. Defendants have also satisfied the segregability requirement under FOIA. Accordingly, the Court will grant defendants' amended motion and enter summary judgment on behalf of USMS, FBI, and DEA. Plaintiff's motion for entry of default and motions for status of case/judicial notice will be denied. A separate order will be issued.

_____/s/_____
EMMET G. SULLIVAN
Date: September 28, 2018                    United States District Judge

38